IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBRA FRAZIER | : |
| | : CIVIL ACTION |
| -v- | : |
| | : NO. |
| CITY OF PHILADLEPHIA, | : |
| WILLIAM BLACKBURN, and TEN DOES | : JURY DEMAND |

COMPLAINT

I. INTRODUCTION

1. This action is brought against City of Philadelphia under 2000e (Title VII) and pursuant to 42 USC 1983 against William Blackburn, Deputy Commissioner of the City of Philadelphia Police Department and the City of Philadelphia. The Action asserts a state claim against City of Philadelphia and Defendant Blackburn under the Pennsylvania Human Relations Act. The action seeks damages that The Plaintiff asserts result from intentional discrimination by the Defendants because of the Plaintiff's African-American race, sex and/or religion or opposition to employment discrimination because of and to include religion, sex and/or race discrimination, or for engaging in free speech and/or petition clause activity against the government (City of Philadelphia) as a citizen and on a matter of public concern.

2. Plaintiff asserts for the purpose of 42 USC 2000e (Title VII – relating to Employment Discrimination and Retaliation and the Pennsylvania Human Relations Act claim) under the reasons below described, that Defendant City of Philadelphia , as an Employer, through the animus supervisor Blackburn did intentionally, recklessly, maliciously and in deliberate indifference of or in reckless disregard for the Plaintiff's anti-discrimination employment rights, and being motivated because of religion, race and sex, or were race, sex

1

and/or religion or protected activity was a motivating factor to treat the Plaintiff differently in the terms and conditions of employment; to demand a quid pro employment conditions, which condition was for sex or female companionship for favorable treatment. Further Blackburn for the purpose of 42 USC 1983, et seq., did under color of state law intentionally, recklessly, maliciously and in deliberate indifference of or in reckless disregard for the Plaintiff's federal protected rights discrimination against the Plaintiff, also being motivated because of race and sex, or were race and/or sex was a motivating factor, as also was Plaintiff free speech and petition clause activity, treat the Plaintiff differently in her contract rights, and treated Plaintiff differently under law, as such rights are provided to whites and males.

    3.    Plaintiff asserts for the purpose of 42 USC 1983 claim and by the reasons below stated that Defendants Blackburn, the Does, and the City of Philadelphia acted under color of state law as a "Person" and that each intentionally, recklessly, maliciously and in deliberate indifference of or in reckless disregard for the Plaintiff's Fourteenth Amendment rights, and being motivated because of the Plaintiff's membership in a class protected under law, her class being female and/ the African-American race, or were being female or of the African-American race was a motivating factor, treated the Plaintiff differently in the terms and conditions of employment and/or to rights and contracts under law as such rights are provided by whites and males thereby depriving the Plaintiff of equal protection of law and a liberty interest right as the right is secured under the Fourteenth Amendment.

    4.    Plaintiff asserts further that for the purpose of the 42 USC 1983, 1985 and 1986 claims, that Defendants Blackburn, the Ten Does, and the City of Philadelphia as a "Person" intentionally, recklessly, maliciously and in deliberate indifference for or reckless disregard of the Plaintiff First Amendment right to free speech and to petition, and to include the Fourteenth

2

Amendment right to equal protection of law and valid procedural due process, deprived Plaintiff under color of law of such federal rights. Supplemental Jurisdiction is invoked to resolve the State Claims.

5. Plaintiff seeks to hold each defendant joint and several liable and to be awarded all relief the law allows, including but not limited to" equitable relief, compensatory and monetary damages, punitive damages against the individual but not against the municipal entity defendant, and to reasonable attorney fees and costs of the litigation; a Jury trial is demanded.

## II. JURISDICTION / VENUE

6. Jurisdiction is founded on 28 U.S.C. 1343 (3) and (4), 28 U.S.C 1331 (Federal Question) and 42 U.S.C 1983, et seq., an Act of Congress providing for the protection of civil rights to redress the deprivation of federal rights under color of any State Law. Supplemental jurisdiction is invoked to resolve the state constitutional and statutory claims. Venue is proper herein as the causes of action arose in Philadelphia County, and in the Commonwealth of Pennsylvania, which place is within the Court's venue. Pursuant to Local Civil Rule 5.1.1 regarding pleading claims for un-liquidated damages, as specifically stated herein, plaintiff seeks to declare unconstitutional the acts of the Defendants, recover compensatory and punitive damages[1], and recovery of an amount in excess of the amount awardable through arbitration, as such this matter is not subject to arbitration under Local Civil Rule 53.2.

## III. PARTIES

1. Debra Frazier (hereafter Plaintiff) is an African-American female; she is domiciled in the Commonwealth of Pennsylvania and resides in Philadelphia, Pennsylvania.

2. William Blackburn (hereafter Defendant Blackburn) is a white male. Blackburn and the Ten Does is domiciled in the Commonwealth of Pennsylvania and are believed to reside in Philadelphia and the Commonwealth of Pennsylvania.

3. Defendant The City of Philadelphia is a City of the First Class, a municipal governmental entity, and operated under the Laws of the Commonwealth of Pennsylvania and through its elected officials and employees, of which Defendant Blackburn is an employee and who holds a policy making position with delegated final authority from the City of Philadelphia via Police Commissioner Charles Ramsey.

IV. MATERIAL FACTS

4. Plaintiff repeats all the preceding paragraphs here and as though each was repeated verbatim.

5. For all times related to the Causes of Action, Defendant City of Philadelphia is an Employer as defined by law under Title VII and the Pennsylvanian Human Relations Act; The City of Philadelphia is and remains the Employer for the Plaintiff and Defendant Blackburn.

6. For all times relevant to the events described within the Complaint and the Causes of Action, Defendant Blackburn, was a Deputy Police Commissioner and a supervisor with City of Philadelphia Police Department, supervising the Plaintiff.

7. Plaintiff is an African-American female and her sex and/or race, or membership in such classes, was known to and by Defendants Blackburn and the City of Philadelphia before their actions as their acts are described below.

8. For all times related to the events described below and the Causes of Action asserted Defendants Blackburn acted as an ultimate decision-making employees and/or authority and as a supervisory employee of City of Philadelphia; Blackburn is and/or was for such acts

against the Plaintiff an animus supervisors whose acts were relied on in whole or part for the decisions of the employers and higher supervisors; all of the decision process relied on by City of Philadelphia and others were form the actions and recommendations of Blackburn. The decisions were to treat Plaintiff differently than other males and white employees and for Blackburn to solicited sexual favors or feminine attentions to him in exchange of usual or preferential treatment enjoyed by other, including male, employees.

9. Defendants Blackburn was appointed as Deputy Police Commission by Charles Ramsey in or about 2008. For all times related to the Causes of Action within this Complaint, Blackburn acted within the scope and capacity of the employment with City of Philadelphia, as a Police Commissioner, under color of state law, for himself, and to aid or abet and/or take substantial steps to further a common plan or purpose to deprive Plaintiff of equal protection and anti-retaliation rights provide under law.

10. On or about May 22, 1989 Plaintiff began employment with City of Philadelphia as a police officer. Plaintiff has enjoyed promotions, has an excellent work history with no discipline, holds the rank of Commander or Captain is a Muslim, and currently a Captain assigned to the Narcotics Unit, which position Plaintiff holds is overseen by and under the supervision of William Blackburn.

11. Commencing on or about June 2, 2008 Blackburn began unwanted advances towards the Plaintiff, such as though continuous telephone calls. The calls started at 8A.M. and ended at 12AM (midnight) Monday through Sunday, and when Plaintiff was off duty, on duty , on weekends, and even when Plaintiff was on vacations . Plaintiff told Black burn to stop and said to Blackburn that she was not interested in him or his advances; however, Blackburn continued with the advances and they became more constant or worse. During the advances  and

telephone calls, Blackburn would ask the Plaintiff what she was doing, did she have a boyfriend, and did he live here or in Florida. Blackburn would telephone the Plaintiff while she was on vacation every day and ask if she was there alone or did she go to Florida with someone; also, did Plaintiff's boyfriend live there. Blackburn would also say during the telephone calls how lonely he was because he had broken up with his girlfriend.

12. Blackburn's' unwanted advances continued over the course of two and a half years; the Plaintiff told Blackburn to stop. Plaintiff thereafter opposed the advancement and made both informal and formal complaints to stop Blackburn's' advances.

13. Blackburn thereafter began to stalk the Plaintiff. For example, At the gym, where Blackburn and the Plaintiff are both members, Blackburn continuously stared at the Plaintiff, her buttocks, and did so as Plaintiff was in the company of others, such and to include a male friend, while Plaintiff was playing racquetball. On another occasion Blackburn drive past the Plaintiff as she walked in the parking lot to her car and then stopped. Blackburn said: "I should run you over". This statement was made after Plaintiff complained about his unwanted advances and asked that he and the behavior stop.

14. Blackburn since the opposition has ordered Plaintiff, and only the Plaintiff, to wear a police uniform. However, Blackburn allows males and whites in the Plaintiff position not wear police uniforms. Further, the Plaintiff's duty clothes assignment is plainclothes, because the Unit that Plaintiff works is a plainclothes Unit. Blackburn has made no similar male or white commanding officers, who are assigned to a plainclothes Unit, wear a uniform to any meetings.

15. Plaintiff is the only female and African-American that has opposed Blackburn's advances and misconduct and thereafter Blackburn required a uniform to be worn when police policy provides that a uniform not be worn.

16. Plaintiff opposed the different treatment by and to Blackburn. Blackburn in response to the opposition said to the Plaintiff, while each was at the Police Administration Building and on the Third Floor, that "I look cute in my uniform."

17. I opposed Blackburn's advances and comments and sought the assistant of Union President John McNesby.

18. On March 8, 2011 Plaintiff filed a complaint with the Police Department EEO Unit. A copy of the complaint is attached and is incorporated here as if repeated verbatim.

19. Following the EEO Complaint, Deputy Commissioner Ross notified me the complaint was being processed and said he would speak with Blackburn.

20. Since my opposition to Blackburn's conduct to McNesby and the EEO Unit and filing of an EEOC Charge, I have been subjected to adverse conduct by Blackburn, The City and Ten Does, that I believe is done to dissuade me from pursuing the opposition, which acts include:

   a. Blackburn saying to other supervisor that he hates me and wants me gone.

   b. Blackburn detailed me to the 26th Police District, which order was given when I had plans for a paid vacation; Blackburn knew of my vacation plans and dates. Moreover, because of the vacation, Blackburn knew I could not fulfill the detail order when given.

   c. Blackburn ordered me out of my office while I was detailed to the 26th district, Blackburn also ordered me not to return to the office until that detail was over. Blackburn also said not to return "even water my plants."

   d. Blackburn ordered me to wear my uniform.

    e.  Blackburn ordered Plaintiff to attend crime informational meetings and not by a designee (my lieutenant). However, white and male captains were allowed to appear by designee. For example, one was a white male captain, Kelly.

    f.  Commission of Police Charles Ramsey failed to stop Blackburn.

    g.  Charles Ramsey disbanded the EEOC Unit.

21.   There were other captains and person (males and whites) who were free at the time, which were in night command, that could be detailed to the 26th and perform the duties Blackburn wished done.

22.   There was never in the Police Department's history since I have been employed a time were an assigned Captain to a Unit as important as narcotics was pulled from the Unit to be detailed temporarily to a District.

23.   Plaintiff could not fulfill Blackburn's detail assignment without interruption, but the assignment detail could be done uninterrupted if a night command supervisor was given the temporary assignment; Plaintiff, however, was required by Blackburn to complete the detail assignment upon return of my three week vacation.

24.   Blackburn's order to the Plaintiff, to attend crime informational meetings and not by a designee (my lieutenant), treated Plaintiff differently because of sex, race and speaking out in opposition to discrimination and employment discrimination.

25.   When Plaintiff was ordered by Blackburn to appear and not by designee, the male and white Captains were permitted to appear by designee or send a designee for the meetings. For example, one was a white male captain, Kelly, who was unable to appear for the meetings because his father was serious ill and needed caring.

26.   When Plaintiff sought to appear by designee, because Plaintiff's mother was seriously ill hospitalized for two months and needed Plaintiff's aid, Blackburn ordered that Plaintiff personally attend the meetings. Blackburn thereafter changed the practice of Captains attending the meetings by designee.

27.   Plaintiff when seeking to appear by designation and aid her mother used her own time; despite, the Employer's past practice and custom that existed then too to allow an appearance by designation under such a circumstance.

28.   On or about Thursday, March 19, 2011 Blackburn stated: "he does not want me here" (meaning: on the Third Floor were his and my office are located).Blackburn also said he "wants me gone".

29.   Plaintiff is known by Blackburn and the City (and others in the Police Department) to oppose racist comments by police officers about the muslin people.

30.   Plaintiff's muslin religion is known by Blackburn and others, as is known that Plaintiff practice the muslin faith.

31.   Blackburn has before treating the Plaintiff differently, as males and whites are treated, observed Plaintiff in her religious muslin clothing. Once, when Blackburn saw Plaintiff in her muslin clothing, he stopped, and asked the Plaintiff "why do you wear those cloths off-duty." On another occasion Blackburn asked Plaintiff why Plaintiff is muslin.

32.   Plaintiff spoke as a citizen about the perceived employment discrimination; in that, Plaintiff's employment with City of Philadelphia did not require as a duty for the Plaintiff to speak out on such matters.

33.     As a matter of law at the time, a public employee speaking out about a public employer and its supervisory personnel engaging in activity that is a violation of law, such as race and sex discrimination, is a matter of public concern.

34.     Following the Plaintiff's opposition, Blackburn said he wanted the Plaintiff "out of her office and to not return until the 26th District detail was over, and the Captain from the 26th returned to his assignment."

35.     Plaintiff did speak out and make a complaint against Blackburn and about sex, race and religious discrimination; the complaint was known by Blackburn, and thereafter, Plaintiff was subjected to repeated adverse employment action by Blackburn, which was intended as retaliation and/or to dissuade the Plaintiff for making, continuing or pursuing the complaint and charge of discrimination and employment discrimination.

36.     On April 1, 2011 Plaintiff filed a Charge of employment discrimination with the EEOC; the Charge was for Religious, Sex and Race Discrimination and for Retaliation for opposing such discrimination. The Charge was duel filed with the Pennsylvania Human Relations Commissions.

37.     Plaintiff has exhausted the agency process by affording the agency's the lawful time to investigate and remediate the Plaintiff's Charge. See Exhibit "A' (Right to Sue Letter from the Dept. of Justice, which letter is incorporated here as if repeated at length).

27.     Defendants City of Philadelphia and Blackburn were on notice of the Charge because the Charge identifies them on the face of the Charge.

28.     As a direct or the proximate result of the Defendants' acts, discrimination, retaliation and animus for the Plaintiff's religion, race and sex, the Plaintiff has sustained

economic damages and has sustained extreme emotional distress that includes but is not limited to humiliation, embarrassment, loss of enjoyment to society and life.

29. As a direct or the proximate result of the Defendants' acts, discrimination, retaliation and animus for the Plaintiff's religion, race and sex, the Plaintiff has suffered extreme emotional distress that has manifested into physical symptoms such but not limited to hair loss, sleep disturbance, appetite eating swings, to include loss of an appetite, mood swings.

30. As a direct result of the Defendants' acts or omission to act, the Plaintiff was deprived under color of state law of federally secured rights, such as the First and Fourteenth Amendment rights. To Free Speech, Equal Protection of the Law, Freedom from Race Discrimination, Substantive Due Process, and valid or adequate Procedural Due Process of Law when denying liberty or property.

31. The Defendants at all times acted intentionally, purposefully, recklessly, maliciously, with animus for the Plaintiff's race and/or sex, in retaliation for Plaintiff Free Speech activity, and in deliberate indifference to and/or reckless disregard for the Plaintiff's rights, which rights were clearly established under law at the time of the defendants adverse actions against the Plaintiff.

V.   CAUSES OF ACTION

COUNT I
42 USC 2000e – Employment Discrimination
Discrimination because of Religion, Sex, Race and Protect Activity (Retaliation)

32. Plaintiff repeats all the preceding paragraphs here and as though each was repeated verbatim.

33. Plaintiff's Sex, Race, Religion and opposition to perceived employment discrimination is a protected status under the Law, and the Plaintiff's status was a motivating

factor or was a determinative factor in City of Philadelphia's decision to treat her differently in the terms and conditions of employment, such as but not limited to what to wear, who could attend a meeting for the Plaintiff, where to work and where Plaintiff's office would remain.

35. Defendant City of Philadelphia and through the actions of its supervisors, such as Blackburn, acted with the intent to discriminate against the Plaintiff for the protected statuses in the conditions of employment.

36. Plaintiffs protected statuses was a motivating factor, it played a part or role, and/or was a determinative factor, in defendant Blackburn's and City of Philadelphia, and the Does' decision to not promote the Plaintiff, start discipline against him, deny a fair hearing on the discipline and/or to terminate the Plaintiff's employment with City of Philadelphia.

37. City of Philadelphia's discussions though Blackburn, Ramsey and others, not to stop Blackburn and to acquiesce to his misconduct and treatment towards the Plaintiff, was intentional, because of her opposition, race, sex or religion, and/or to dissuade the Plaintiff as it would a reasonable worker from engaging in or continuing in the protected activity.

38. Plaintiff was subjected to different treatment in the work place, to a hostile that was regular and severe, and to a quid pro quo employment condition, which condition was by police or practice of the employer that condoned or acquiesced to the conditions and hostile work condition.

39. The employer failed to take corrected action to stop the reported illegal employment practices., to stop the different treatment in the terms and condition of employment because of the person's region, race, sex and/or opposition to perceived employment discrimination, or the quid pro quo employment condition by Blackburn.

WHEREFORE, Plaintiff prays the Court enter judgment for her and against City of Philadelphia, and to award equitable relief by the jury and legal economic relief that make the Plaintiff whole; and to award reasonable attorney fees and litigation costs.

## COUNT II
### 42 USC 1983 – 1st & 14th Amendment
### Free speech / Petition Clause & Race Discrimination & Equal Protection

40. Plaintiff repeats all the preceding paragraphs here and as though each was repeated verbatim.

41. Plaintiff spoke out with speech and through a petition; the Petition was filed with the Equal Employment Opportunity Commission and Pennsylvanian Human Relations Commissions, and each (the speech and Petition, concerned illegal religious, race and sex discrimination done by the City of Philadelphia, Deputy Police Commissioner Blackburn and others who were at such and all times governmental entities and engaged in conduct made illegal by Federal and Commonwealth of Pennsylvania law.

42. Plaintiff petitioned with a governmental entity, such as the Equal Employment Opportunity Commission and the Pennsylvanian Human Relations Commission, to address a grievance with the government for intentional religious, sex and race discrimination in employment and employment opportunity, and retaliation.

43. Plaintiff petitioned were filed the Agencies specifically created and charged by law to hear Plaintiff's grievance against the government defendants.

44. Plaintiff cooperated with and in the governmental agency's process that was investigating and to remedy where possible the Plaintiff's grievance of illegal employment discrimination. Plaintiff opposition and Petition involved a matter of public concern; such as

to rid from employment and remedy the acts of a governmental employer and its governmental employees' illegal employment conduct.

45. The Plaintiff speech and petition identified The City of Philadelphia and Blackburn as the entities and persons violating the anti-discrimination in employment laws of the United States and Commonwealth of Pennsylvania; specifically, Plaintiff alerted the government of the illegal Defendants' acts, such as but not limited to, maintaining a quid pro quo employment condition, condoning such, failing to take promote or approaches action to stop the reported illegal employment practices., and to treat employees differently in the terms and condition of employment because of the person's region, race, sex and/or opposition to perceived employment discrimination.

46. Subsequent to and motivated by the Plaintiff's speech and petition, Blackburn engaged in the course of conduct described above, which conduct has escalated and continued to date, and which conduct potentially subjects Plaintiff to discipline by or under the instructions of Blackburn, the Does, and the others.

47. Blackburn and the Does acts against the Plaintiff were substantially motivated by, or because of, the Plaintiff's speech and/or petition clause, and/or First Amendment activity.

48. The retaliation by Blackburn was intentional and malicious, and it is the result of a policy practice or custom of the City to not ignore employment discrimination and/or to condone or acquiesce to employment discrimination and too retaliation by supervisors, and/or employees, and too to not take prompt remedial or adequately supervision and/or train to stop retaliation for free speech and petition clause activity.

49. The direct or proximate caused for the Plaintiff' economic damages and extreme emotional distress is the Defendants actions and the City policy, practice or custom (above described).

50. Plaintiff suffers extreme emotions distress that manifests into physical form, such as but not limited to: loss of sleep and appetite, depression, mood swings, weight loss, and weight gains,

51. The Doer, Blackburn and others were all in a position to stop depriving the Plaintiff of federally secured rights; however, each intentionally did not act but condoned or acquiesced to the deprivation of rights by the others.

50. Blackburn and/or the Does as supervisors had actual knowledge of the others conduct and that the conduct would or were violating the Plaintiff's rights; however, the Does and Blackburn as supervisor did not but could have stopped the conduct. Rather each acquiesced in the conduct and did so too to aid in the intended outcome of the conduct, which intent was to dissuade the Plaintiff from making or continuing the opposition to Blackburn's advances, quid pro quo condition for continuing employment, and retaliation.

52. The City, Blackburn and/or the Does acted with deliberate indifference to the rights of the Plaintiff, or in reckless disregard for the rights, they acted maliciously, with gross negligence, and knowledge of the consequences of their acts or omission to act. Each acted under an established and maintained a policy, practice or custom, such as described above or to retaliate against employees, including the Plaintiff, for engaging in protected activities under law, such as to oppose illegal religious, sex and race employment discrimination.

54. Plaintiff is a member of a class protected under law, Plaintiff is: a) female; b) African-American; and c) Muslim.

55. Plaintiff has a property interest in her employment as a police officer with City of Philadelphia by law and/or contract. Plaintiff enjoyed continued employment and removal only upon a finding of good cause for discipline and termination after a full and fair hearing on the merits with the burden on City of Philadelphia to proof good cause. The interest was protected by the Fourteenth amendment due process clause.

56. Plaintiff alleges that Blackburn, the City and the Does denied Plaintiff of equal protection of la, because of the Plaintiff religion, race and/or gender (sex). Further, that the defendants intentionally engaged in the conduct that is described above because of the Plaintiff memberships in a protected class, and/or to cause disparate treatment against Females, Muslims, and/or African-America females.

55. Defendants Blackburn, the City, and the Does intentionally discriminated against the Plaintiff, because of her religion, sex and race, which were all or one or a combination of each a motivating factor in the defendants' decision to treat the Plaintiff as described she was treated.

56. Plaintiffs' religion, sex and/or race was a motivating factor but not necessarily the sole motivating factor in defendants' Blackburn's and/or the Does' decisions to require a different clothing appeal, office location or other conduct not described but occurring since the Plaintiff's opposition to unequal treatment because of religion, race or sex.

57. Defendants acted with the intent to discriminate against the Plaintiff because of her religion, sex, race or protected activities, and sex, religion or race played a motivating part in defendants Blackburn's and the Does' decision even though other factors may also have motivated the defendants' decision.

58.     Plaintiff's religion, race, sex and protected activities was a determinative factor in defendants' decision process and acts against the Plaintiff.

59.     Plaintiff was subjected to a materially adverse action at the time or after the Plaintiff engaged in protected conduct, such as but not limited to: being subjected to potential discipline, denied equal employment rights and benefits, her office was moved, which increases travel time and costs, cause humiliation and embarrassment, and she was required to appear for meeting in person and not by designee and was detailed to a district, which acts were done by Defendant Blackburn and acquiesced by the Does.

62.     There was a causal connection between the material adverse action and Plaintiff's protected activity, for the adverse action occurred short in time to the Plaintiff's oppositions to Blackburn's conduct and decision to move Plaintiff's office, detail her to the 26th District, and require her to wear a uniform and also to appear at meetings in uniform and not by designee.

63.     Plaintiff was treated different than male or whites and non-Muslims.

WHEREFORE, Plaintiff prays the Court enter judgment for him and against Blackburn, Vital and the Does, to hold each individually and jointly liable, and to award compensatory and economic punitive to make the Plaintiff whole and to also award punitive damages, reasonable attorney fees and litigation costs.

## COUNT II
### Pennsylvania Human Relations Act

71.     Plaintiff repeats all the preceding paragraphs here and as though each was repeated verbatim.

72.     City of Philadelphia denied Plaintiff equal employment promotion opportunities, employment and continued employment, because of or motivated by, of by a determinative factor, of the Plaintiff's religion, race, sex or protected activities, such as to oppose employment

17

discrimination because of religion, sex and/or race or protected activities; filing a charge of employment discrimination, and/or cooperating with the agency in it duty to investigate and/or remedy another's or his own charge of employment discrimination.

73.     The City of Philadelphia subjected the Plaintiff to a hostile work environment, retaliation, and/or a quid pro quo work condition.

74.     The City failed to take prompt or appropriate action to stop Defendant Blackburn, Blackburn or the Does.

75.     The City acted or omitted to act under a policy to discriminate in employment, and Blackburn and the Does intended to aid, abet, compel, or coerce the discriminatory or retaliatory discipline, denial of fair hearing, and/or termination of the Plaintiff.

76.     The individual defendants, Blackburn and the Does are a supervisory employee with City of Philadelphia; each knew or should have known of the discriminatory or retaliatory act by others and their own, and each either shared in the discriminatory or retaliatory purpose and intent of the employer or refused to take prompt remedial action against discrimination or retaliation against the Plaintiff.

WHEREFORE, Plaintiff prays the Court enter judgment for him and against City of Philadelphia, William Blackburn, -Vital and the Does, to hold each individually and jointly liable, and to award compensatory and economic punitive to make the Plaintiff whole and to also award punitive damages, reasonable attorney fees and litigation costs.

VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court enter judgment for him and against the defendants, City of Philadelphia, Lawrence Blackburn, Michelle Howard-Vital and the Does, to hold each individually and jointly liable, and to award compensatory and economic punitive to make the Plaintiff whole and to also award punitive damages, reasonable attorney fees and litigation costs.

Date: March 27, 2012

                                              _____/s/
                                              Brian M. Puricelli
                                              Attorneys for the Plaintiff Debra Frazier

Law Offices of Brian Puricelli
691 Washington Crossing Road
Newtown PA 18940
(215) 504-8115
puricellib@gmail.com